UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SMP GmbH & Co. KG, | Case No. 2:16-cv-2147-APG-PAL |
| Plaintiff, | **Order Transferring Case** |
| v. | (ECF No. 7) |
| ONU.com, an internet domain name, | |
| Defendant. | |

SMP GmbH & Co. KG seeks to wrest the domain ONU.com from C3 Holding, GmbH, who recently purchased it. SMP owns a German website that allows consumers to rent out their homes. C3 is an Austrian marketing company that offers brand-loyalty consulting services to companies in Europe. Both companies apparently invested hundreds of thousands of dollars developing new products that they plan to sell under the brand "ONU." SMP plans to open a new branch of its house-sharing business at ONU.com; C3 plans to roll out a new consumer-loyalty program hosted at ONU.com.

SMP brought this case alleging that C3 is a cybersquatter under the Anticybersquatting Consumer Protection Act (the "ACPA"), so that SMP should be given ONU.com. The ACPA allows an owner of a trademark to regain possession of a domain that is confusingly similar to its mark.

I need not reach the merits of SMP's claims because I have no jurisdiction over this case. Instead of dismissing this case I will transfer it to the Eastern District of Virginia. The parties agree that the domain name registry is located there so jurisdiction is proper, and SMP has requested this transfer in the event that I have no jurisdiction. This case is therefore transferred.

**I.      Discussion**

SMP admits that C3 has no minimum contacts in Nevada, so I would have jurisdiction, if at all, only under the ACPA's in rem jurisdictional provision, 15 U.S.C. § 1125(d)(2) (the "in rem

provision").[1] SMP believes that I have jurisdiction under this provision so long as it deposits the domain documents with a court in this district. But both the statute's text and the overwhelming weight of caselaw disagree.

Within the in rem provision (which is subsection (2) of section (d)),[2] there are two subsections that matter here: (A) and (C). Subsection (A) sets out the initial requirements for jurisdiction. It says "an in rem civil action" "may [be] filed" "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located."[3] In other words, there is jurisdiction in the district where the company that holds the registry is located—here, the parties agree that the registrar (Verisign) is located in Virginia.

Subsection (C) says that "[i]n an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which . . . documents sufficient to establish control" over the domain name are deposited with the court.[4] SMP contends that subsection (C) is an independent grant of jurisdiction so that it can sue in any district where it deposits domain control documents. But that reading does not jive with either the statute's text or the authority interpreting it.

---

[1] SMP also briefly mentions that I may have jurisdiction under 28 U.S.C. § 1655, which affords jurisdiction over property within this district. SMP contends that the domain is "property" in this district under the ACPA. But this argument relies on the same faulty reading of the ACPA that I reject below.

[2.] The relevant parts of the in rem provision state in full:
   (2)(A) The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located . . .

   (C) In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which--
   (i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or
   (ii) documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

[3] 15 U.S.C. § 1125(d)(2).

[4] *Id.*

First, the text of these provisions cut against SMP's reading. The statute expressly states that "a civil action" can be brought in a district where the registrar is located; there is no similar language in the section discussing the deposited documents. Much the opposite: the document-deposit subsection states that it applies "in an in rem action under this paragraph"—which I can only take to mean *an existing in rem action*, where there is already jurisdiction under subsection (A).[5] Further, subsection (C) says the "situs" of the domain name is in the district once the documents are deposited, it does not say "jurisdiction" is in the district, or more importantly it does not use the language from subsection (A) to say that "a civil action can be filed" in this district.

The canons of construction also militate against reading the in rem provision so that jurisdiction is conferred by merely depositing documents with a court. If subsection (C) means that a plaintiff can sue in any district so long as it deposits documents there, the rest of section (2) is meaningless. Plaintiffs can simply sue wherever they want. That reading would violate the canon of construction prohibiting an interpretation that renders a provision nugatory.[6] And to assume that Congress would use different language to grant the same sort of jurisdiction—when subsections (A) and (C) are only a few lines apart—would equally violate the canons that provisions should be interpreted by their ordinary meaning and in light of their surrounding language.[7] The clearest reading of the in rem provision is that subsection (A) provides the jurisdictional requirements, and subsection (C) triggers after the action is already properly filed to define the physical location of the domain (for various purposes, such as preventing someone from transferring the domain to another registrar during the case).[8]

---

[5] *Id.*

[6] *Li v. Eddy*, 324 F.3d 1109, 1110 (9th Cir. 2003).

[7] *In re 7-Hills Radiology, LLC*, 350 B.R. 902, 904 (Bankr. D. Nev. 2006).

[8] SMP argues that subsection (4) also matters here. That subsection states that "The in rem jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam." SMP contends that "paragraph (2)" includes each of the provisions within it, including subsection (C). But it does not explain why that matters. SMP appears to be arguing that because subsection (4) refers to paragraph "2" generally, every subsection within that paragraph must be an independent grounds for jurisdiction. That

Second, setting aside the statutory construction, the courts that have addressed this issue have held that subsection (C)'s document deposit language is not an independent source of jurisdiction. SMP has not cited a single case that has addressed this issue and held otherwise.[9] The Northern District of New York soundly rejected SMP's interpretation in *Standing Stone Media, Inc. v. Indiancountrytoday.com*: "all courts which have examined the question of whether [subsection (C)] was intended as an alternative for asserting in rem jurisdiction over domain names have rejected the suggestion."[10] The court further explained that subsection (C) operates to set the location of the domain "in one of the districts identified in" subsection (A).[11] The Second Circuit agrees:

> [Plaintiff's] error is in assuming that subsections (A) and (C) both address jurisdiction. They do not. We have already observed that the former subsection is the operative jurisdiction-granting provision within § 1125(d)(2), while the latter serves to describe the legal situs of the disputed property for purposes of securing the district court's control and authority over that property during the litigation.[12]

Every other case I have found that addressed this issue holds the same.[13]

---

clearly is not the case, because subsection (B), also within paragraph 2, is about service of process, not jurisdiction. And in any event, SMP's argument that section (4) and (C) would be meaningless if I do not interpret subsection (C) as an independent jurisdictional grounds is meritless. Subsection (2), including subsections (A), (B), and (C), provide one single means of establishing jurisdiction—and that is in addition to any existing jurisdictional grounds *outside of the ACPA*. That is all subsection (4) says. And subsection (C) is not rendered meaningless by my interpretation: it sets the physical situs, or location, of the domain name—something that mere jurisdiction would not do on its own.

[9] The district court cases that SMP cites do not appear to address the in rem jurisdiction questions at issue here.

[10] *Standing Stone Media, Inc. v. Indiancountrytoday.com*, 193 F. Supp. 2d 528, 533 (N.D.N.Y. 2002).

[11] *Id.*

[12] *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 303–04 (2d Cir. 2002).

[13] *See Mattel, Inc. v. Barbie–Club.com*, 2001 WL 436207 (S.D.N.Y. May 1, 2001); District of Massachusetts in *FleetBoston Fin. Corp. v. FleetBostonFinancial.com*, 138 F. Supp. 2d 121 (D. Mass. 2001); *Cable News Network, L.P., L.L.L.P., v. CNNews.com*, 162 F. Supp. 2d 484, 489 n.15 (E.D.Va. 2001).

In sum, the text of the statute and the vast weight of authority all suggest that I have no jurisdiction over this case.

## II.   Transfer to the Eastern District of Virginia is proper.

In the alternative, SMP asks that I exercise my discretion to transfer this case to the Eastern District of Virginia where the registrar, Verisign, is located. I have discretion to decide whether to dismiss or transfer a case when I have no jurisdiction over the defendant (or here, the property).[14] The transferee court must have jurisdiction, and it appears there is no dispute the Eastern District of Virginia has jurisdiction under the ACPA.[15] This leaves the question whether transfer is in the "interests of justice."[16] There is no set list of factors for me to consider, but courts commonly balance considerations such as the potential prejudice from the transfer, the strength of the plaintiff's case, and whether the plaintiff brought the action in good faith.[17]

I find transfer appropriate here. SMP does not appear to have a strong case.[18] On the other hand, its success will likely turn on extensive factual evidence and determinations, so it is hard to accurately gauge its chances at this point. SMP appears to have brought this case in good faith; it provides evidence showing that it invested hundreds of thousands of dollars in the ONU mark and originally owned the domain. And the Eastern District of Virginia appears to be the only district with jurisdiction over this case given that the parties are foreign, and the ACPA would therefore

---

[14] *See* 28 U.S.C. § 1631 (allowing transfer where the court has no jurisdiction over a case); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962); *Reed v. Brown*, 623 F. Supp. 342, 346 (D. Nev. 1985).

[15] As explained above, the ACPA confers jurisdiction in the district where the registrar is located—and both parties agree Verisign is located in the Eastern District of Virginia. *See* ECF No. 22 at 6.

[16] *Harrell v. Kepreos*, 175 Fed. Appx. 793, 794 (9th Cir. 2006).

[17] *Fisher v. United States*, No. C08-1795RAJ, 2009 WL 2187552, at *2 (W.D. Wash. May 18, 2009).

[18] C3 has made strong showings against both elements of SMP's ACPA claim. It does not appear that SMP has strong trademark rights in the ONU mark given its limited use of the mark. *See Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1158–59 (9th Cir. 2001) (requiring that use of a mark be sufficiently public before rights vest). And C3 has provided evidence that it purchased the domain in good faith. *See Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002) (requiring use of the domain by the defendant be in bad faith).

appear to be the only jurisdictional basis for a lawsuit. There is no indication that these foreign companies will be affected by which district they must travel to for trial, and there is no other indication of prejudice. Indeed, dismissing the case and further delaying the parties—when both have stated that quickly resolving this lawsuit is important to them—would be more prejudicial. I therefore transfer this case to the Eastern District of Virginia.

### III. Conclusion

IT IS THEREFORE ORDERED that the clerk of the court shall transfer this case to the United Stated District Court for the Eastern District of Virginia.

DATED this 21st day of October, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE